and I will now call the next and final case for the day. Michael Reiterman versus Farah Ali Abid. We have Luke Leroy for the appellant and Matthew Sarilson for the appellee.  Yes, I am your honor. Okay. Yes, and you got it right in the middle there. It's Luke Leroy. This has not been a good day for me on name, so apologies all around. It looks like we don't have the other counsel yet. Do we not have Mr. Sarilson? There he is. There we go. All right. May it please the court. As I said, my name is Luke Leroy. I represent, it's Farah Abid and she is the appellant in this case and this is an appeal of an interlocutory order denying a motion to refer a matter to arbitration. The standard of review in this case would be a de novo review and obviously if you have read the briefs, which I have, you would know that at the time of this case, Ms. Abid was an aspiring law student and had engaged the services of test masters, which was in the business of providing tutoring to prepare individuals to take the LSAT test. Mr. Reiterman was the tutor assigned to Ms. Abid. By Mr. Reiterman's own admission, they developed a relationship of sorts. He denies that there was any sexual activity, but does say that they went out on some dates and things of that nature. And then Ms. Abid's position is that at some point during that relationship, Mr. Reiterman sexually assaulted her. I know there are questions about what the evidence was, but is any of that really relevant or is the only question what the parties communicated about their the background is not relevant and it was really just leading into the fact that there was prior litigation and that there was a settlement agreement. So you're helping me advance my argument, but essentially there was a very significant settlement agreement that was reached in what we referred to in our briefs and what's been referred to in the lower court as the 2018 case. Obviously the most emphatic component of that settlement agreement is the arbitration clause and it's a pretty broad arbitration clause. The settlement agreement was under seal, but we did discuss the the quote from the arbitration clause. It says any controversy or claim arising out of or relating to this contract shall be settled by arbitration. The allegations are that Mr. Reiterman suspected that Ms. Abid was not adhering to the settlement agreement and was which essentially he said are slam blogs. I think that was the term that was used. And then there was a lawsuit filed in California. Ms. Abid established that there was no substantial ties whatsoever that she had to California. So the case was refiled in the middle district of Florida and once she received the complaint, Ms. Abid retained our office. We reviewed documents that she gave us and it certainly appeared to us that everything that Mr. Reiterman was complaining about was related to the contract. That there was a violation of the contract. If you look at the counts of the complaint, count one was that Ms. Abid had committed fraud and that was a claim for rescission of the actual contract. Count two was fraud. Count three was an alternative count of breach of contract. Count four was defamation. Obviously there was an anti-disparagement provision of the settlement agreement, so that would envelop that. Count five was another defamation claim. Count six was tortious interference related to her conduct, again covered by the settlement agreement. And then count seven was the intentional infliction of emotional distress. So it was our position that all of these communications, everything that was at issue in this complaint was related to the settlement agreement. And it was obviously from the the plain reading of the counts something that Mr. Reiterman felt that Ms. Abid was in breach of. So does it, my question is, does it matter what Mr. Reiterman's kind of reasons for attempting to rescind the settlement agreement were? Or does it matter that he, it appears from the evidence, said I'm no longer bound by this agreement. And she said, if assumed that she said, well me neither, right? Are those the facts that we're considering? Those things happened? Those did happen, but I think you have to go back to the original communication from Mr. Reiterman's attorney. And what she said in the letter that Ms. Abid received and responded to, and I'll quote, and this is on page four of our initial brief, if we do not receive a substantive response to this letter on behalf of Ms. Abid by 5 p.m. Pacific on Wednesday, April 10, 2019, we will assume she has no interest in settlement. So the initial letter sets the scope of these communications from our perspective. So this is an additional settlement communication. So one of the arguments that we raise is that whatever was given in response to that, regardless of the contents, was in response to a settlement negotiation that would then be governed by rule number 408. And obviously under public policy, settlement negotiations are confidential and privileged. And if there was an issue as far as Ms. Abid's conduct in repudiating or rescinding this contract, I think we cite pretty substantial case law that that goes back to the settlement agreement, conduct related to the settlement agreement, and that should have been something that would have been determined by the arbitrator. So what if she is saying there is no longer a settlement agreement, the settlement agreement no longer exists based on your repudiation and my responsive rescission? At that point is the question that we're looking at whether the settlement agreement exists as a contract? Well, I don't think it's that simple. I think that there needs to be some kind of a legal determination. And obviously we stress the fact that when Ms. Abid was communicating under the original settlement communication, she had no counsel at the time. I don't think there's any question that she's under a great deal of emotional pressure just based on the nature of these issues between Ms. Abid and Mr. Reiterman. So our position was that you still need to look at it as something that emanated from the settlement agreement. So I don't think she could just unilaterally rescind it, especially since whatever efforts to rescind or whatever communication to rescind that originally came from Mr. Reiterman was predicated on the concept of, do you want to continue to talk settlement? And that was really something very important from our perspective. Now, the issue that we have, and again, we quote this in the briefs, is was there an agreement that needed to be evaluated? And obviously no one questions whatsoever the fact that there was a written settlement agreement that was valid. And was it an arbitrable issue? Well, if the conduct at issue is something that I think served as the predicate or the foundation of any discussion of rescission, that conduct was all related to the contract, was all related to the settlement agreement. So the only other issue there was, was there any arbitrable issue that had been waived? And our position was that, no, that's not waiver when you're communicating in response to a settlement proposal. And I just didn't think that the judge, and candidly, I felt that there was a lot of influence just because of the nature of the communications and the conduct of the hearing. I thought that sort of was overcast to the basic issues of whether or not there was an agreement to arbitrate, and whether or not these disputes, rescission or not, related to the settlement agreement and the language that required the parties to arbitrate. Wouldn't a contract, wouldn't rescission of a contract always relate to the contract? How would this be any different than the ordinary rule? I don't think it is. And I think that if there's an issue of rescission, if someone determines whether or not there's a rescission, and there's an arbitration provision, I still think that it's incumbent on the very broad and presumptive necessity of referring these matters to arbitration under such circumstances that, you know, it needs to be determined by the arbitrator, not a circuit, excuse me, a district court judge. So that was just our perspective. And then we cite all the cases that talk about that. Presumably, if there's an agreement to arbitrate, virtually any issue related to that contract does go to the arbitrator. So, you know, was there a valid rescission? I don't think that in the testimony provided by Ms. Abad, she indicated that this was anything more than just a sort of a knee-jerk reaction to her, didn't have any counsel, didn't understand the scope of what she may or may not have been saying. Clearly, in her testimony, there's a lot of, I don't want to call them threats, but I'll say, for want of a better word, they could certainly be seen as efforts to try to impugn Mr. Reiterman with talking to politicians or publishing books or things of that nature. So I think the entirety of that shows that Ms. Abad, rather than making a well-reasoned decision in a response to the offer to continue to discuss settlement, whether she actually repudiated the agreement. I mean, she was upset. But counsel, no matter what the facts are, as far as whether she did repudiate or not, you would send that issue to the arbitrator? I would, and I think the 11th Circuit case law supports that. And again, that we cited in our brief, any issue as far as the arbitrability of a concept related to a settlement agreement that contains an arbitration clause, I think the cases are clear. That all goes to the arbitrator. Is there a valid agreement? Is it an issue that would be subject to arbitration? Has that issue ever been waived? I don't know that Ms. Abad's conduct ever expressed a waiver to arbitrate. But again, that would go to the arbitrator? I would respectfully submit the answer to that is yes. Okay. Your time has expired. You have reserved five minutes for rebuttal. We'll move to Mr. Sarilson. Good morning, Your Honor. May it please the Court, I'm Matt Sarilson on behalf of the plaintiff, Michael Ryderman. I'm a little bit confused as to what the actual issue is on appeal, so I can briefly say why we're here today. There was a settlement, there was a contract settling a prior dispute. Prior to this lawsuit being filed in September of 2019, the parties to that contract mutually rescinded that contract. They said so in writing, in email correspondence back and forth, and then they acted in conformity with a rescinded agreement. When Ms. Abad was finally served, she responded with a motion to compel arbitration. But it's really important to read the actual motion to compel arbitration, which is on page 5th. I refer specifically to page 56 of the appendix, which is paragraphs 16 and 17, and I will highlight this throughout my argument. The move-in says, quote, a court first determined whether the parties agreed to arbitrate the dispute, which in turn requires two separate determinations, whether there is a valid agreement to arbitrate and whether the dispute in question falls within the scope of that arbitration agreement. Paragraph 17, if there is a valid agreement to arbitrate, the court then applies federal law to decide whether the party's dispute is within the scope of that agreement. The move-in specifically requested the district court to make the very findings that the appellant now complains of. They never argued delegability. The word delegation, you can just do a word search. The word delegation does not come up in the briefs, and it doesn't come up in the transcript. It comes up for the first time in the initial brief. We opposed arbitration, saying there's no contract between the parties. The no party requested hearing. The district court, sua sponte, held an evidentiary hearing, which another word for an evidentiary hearing is a trial. The judge had a trial, a bench trial, hearing from the two people who wrote the letters of rescission back and forth and concluded as a when my client sued in September of 2019, there was no contract between the parties. There was no contractual obligation. The court found that it was repudiated. Correct. Repudiated. Rescission is a doctrine in which one party wants to restore the status quo ante, and it returns the consideration and asks for the other side to return a consideration. We don't have that here. The court found that it was repudiated. Which left the parties where they are. I would say that the court didn't. I would say that the words that were used in this case were rescission, novation. I would point, for example, to the beginning of the transcript. I understand about the words that were in the pleadings and all that, but the judge found that, as a matter of fact, that the parties repudiated the agreement. Right. The court found, as a matter of fact, that there was no agreement as of the date this lawsuit was filed. The counsel isn't that why we're here, is that when you're disputing the validity of a contract, that goes to the arbitrator, not to the district court. No, Your Honor. I can't stress this enough. We are not disputing the validity of the contract. We have never once disputed the validity of the contract. We are disputing the existence of the contract. Under the Sheehan decision, Justice Kavanaugh's decision from a few years ago, and the Wyand decision out of the 11th Circuit, there is a difference between challenging the existence of the contract, which is for the district court to decide as a contract law, and there's very clear Florida contract law on point, the Henderson case, that goes to the district court to decide whether there is a contract to begin with. If it is a validity question, validity meaning it's a valid enforceable contract, that goes to the arbitrator to decide. We've never challenged that. The argument that we raised was, there's no contract. The hearing that the district court had was, he said by his own admission, to determine whether there was a contract in existence at the time that's in his order. When he says, I had a hearing to determine whether there was a contract in existence at the time that this lawsuit was filed, that he concluded that it didn't. And so our position is, this is exactly what the district court should have done. More importantly, it was the movement. It's the appellant here who specifically requested that the court make the very findings he made. And I would point specifically to page 30 of the initial brief. Page 30 of the initial brief to this court, Ms. Abed says, as a result, this court should reverse the lower court decision and enforce arbitration. Or in the alternative, and it's this in the alternative, that's the problem. Or in the alternative, this court should remand the case for a trial to determine whether a contract exists. We had a trial. We've already done that. We had the trial. The trial court said, there's no contract. So the appellant is asking this court to remand to, I guess, have another trial to make the exact same findings. So we're not entirely sure what it is that the appellant is asking for since the relief requested is the relief we already have. This case has more to do with the fact that the appellant in this case doesn't like the ruling. I don't see how Ms. Abed can ask the trial court in paragraphs 16 and 17 of her motion to compel arbitration, can say to the district court, we want you to make these decisions. Well, he did so. But he made those decisions adversely to Ms. Abed. Now, on appeal, he's saying, we were just kidding. We don't want the district court to make those decisions. We actually want this to be delegated to the arbitrator. And ironically- Counsel, this is going to boil down to whether we see this as a question of the validity of agreement. And so tell me how this court is going to articulate in this situation where it falls into those two choices. Because this is not a situation where there was no, a contract never existed. A contract clearly existed. And I could argue that if it was rescinded from fraud due to the inducement, we go back to the beginning, it never existed. But the Supreme Court has said in a fraud in the inducement case, send it to the arbitrator. Or I could see this as that the district court was doing exactly what it was supposed to do. There's nothing, there's no contract going forward. How do we split that line when we've got case law that isn't clarifying that point? So I would say, Your Honor, there is some case law. There's this court's Wyand decision. And there's the Henry Schein, I think it's pronounced Schein, Henry Schein or Henry Schein decision, Justice Kavanaugh's opinion, where the court unanimously said, of course, the first thing for the district court to do is to determine whether there is a contract in existence. And then you reach the secondary issues. And that's exactly what Wyand says. There's a decision that's, I understand it's just a district court decision, the Comperi case, the Comperi case that we cite out of the Southern District of Florida. The very first thing, the district court's always going to have to do something. An Article III judge is going to have to do something. And the very first thing the Article III judge has to say is, is there a contract? And then if there is a contract, then the question of whether it's valid, whether it's enforceable, those issues go to the arbitrator. We're not disputing that validity and goes to the arbitrator. The Wyand decision says there's three kinds of challenge. It actually, it articulates very, very well. Wyand case says there's three kinds of challenges. One is a challenge to the existence of the contract. One is the challenge to the validity of the contract. And then one is the validity of the arbitration provision itself. The question of existence or fraud in the inducement of the arbitration provision itself is for the district court. But you have the Buckeye case from the Supreme Court that specifically says if the claim is fraud in the inducement of the, let's see, if the fraud in the inducement of the arbitration clause itself, the federal court may proceed to fraud in the inducement of the, of the, of the contract itself should go to the arbitrator, not the federal court. We've never, nothing that we've raised at the district court level in our, in our moving papers or in this court suggest that this case has anything to do with fraud in the inducement of the arbitration agreement. We're not suggesting the entire agreement, which we're not, why is Buckeye not going to cause us to send this to the arbitrator? Because Buckeye says if there's a, if, if the claim is fraud in the inducement to the agreement, we're not talking about fraud in the inducement. In fact, no one's ever claimed that this is fraud in the inducement with respect to the motion to compel arbitration. Our challenge is exclusively to the existence of the contract, which is totally distinct under the Wyand decision. The Buckeye case doesn't challenge the existence of the contract. No, no, but, but you filed a lawsuit that says fraud in the inducement of the entire settlement agreement. And Buckeye says the, in the issue in the case, when, whether a claim of fraud in the inducement of the entire contract is to be, is to be resolved by the federal court or whether the matter is to, is to be resolved to the arbitrator. And, and that Buckeye is saying arbitrator get, the federal court gets it if you're only saying fraud in the inducement to the arbitration provision. So, so why isn't this directing us to send it to the arbitrator? Because the very first, the very first question you have to ask isn't whether there was fraud in the inducement to the agreement. The question, the very first question that you have to ask is on the date this contract was filed, the date this lawsuit was filed in September of 2019, was there a contract between the parties? Forget what it says. It could be a contract for anything in the world. The question is on the date that this lawsuit was filed, was there a contractual permit? Was there a contract between the parties? That is a matter of Florida contract law. And the court said, no, there is no contract. The parties, as of the date this lawsuit was filed, there was no contractual obligations to the parties because both parties said we're done with this contract. Does it matter, does it matter what Mr. Reiterman's kind of original reasons for saying that he wanted to rescind the contract were, or does it just matter that he said it and she responded? Right. I don't know why. I mean, under basic contract law, intent is irrelevant. You can contract to buy a Mercedes for the right reason, for no reason. But if you contract to buy a Mercedes, congratulations, you bought yourself a Mercedes. I don't think it's any different. He said, we're not honoring this. And she specifically used the phrase, I'm mirroring your belief and I'm not honoring this either. And so when you have two parties who say we're not honoring an agreement, there is no agreement under, that's what Florida contract law says. There is no agreement at all. What she could have said was, you say you're not honoring this, so I'm going to sue you for breach, right? She could have certainly responded among many ways by saying, if you don't fulfill your obligations, I'm going to sue you. Of course, she could have. And then at that point, everything goes to the arbitrator to figure out, right? I think at that point, you wouldn't have mutual rescission of a contract. So you would still have a contract. So the issues, so the response that we raised to the motion of complimentation is not the response we would have made because we wouldn't be able to argue that there was no between the parties. I think that makes a distinction. I understand fundamentally what it is that the appellant is saying. Our point, your honor, is this is fundamentally different from what they asked the district court to do. I mean, our position first and foremost is the issues raised in the initial brief are waived because they made a different argument to the district court. They specifically said we want the district court to determine that this is an arbitratable agreement. And we want the district court to determine that all of the counts fall under the arbitration agreement. If it wasn't lawful for the district court to make that determination, it doesn't matter whether she asked the district court to do that or not, right? I mean, we need to look at what the law requires in terms of arbitration agreements and contract formation and rescission and all of that. No, your honor, because you can waive an argument. She could have made the argument to the district court that this should be delegated to the arbitrator. She didn't just not do that. She did the opposite. The argument that she could have made, I think she would still be wrong, but the argument she could have made is that this issue should go before the arbitrator. She didn't do that. She waived that issue. She made a different argument. She specifically says I want you, Judge Jung, I want you to make this determination, which we agree. And the judge did. You're saying that even if this issue, you're saying A, this issue should not have gone to the arbitrator because it's about the existence of the contract. And B, even if it should have under ordinary arbitration principles, she waived that argument. And so it stays in the district court. She absolutely would. I think that's absolutely right. She's wrong on the law. I'm just trying to make sure that I understand that that's the argument you're making. The argument that they're now making on appeal for the first time was waived by not making it and by making the exact opposite argument in the district court. That's our position. Mr. Sarilson, I have one last question. Your time has expired. But if Ms. Abed had said nothing other than I'll see you in court in response to the communication, would that, would this all go to the arbitrator? Probably. Yeah, she did. If she just says, if her response was, I'll see you in court, if I says it, if when she says I see you in court, meaning I'm going to take some legal action against you, then yeah, that's not rescission. But when she says, when she mirrors the statement that I'm not going to abide by the agreement, that's different. She took an affirmative. This is no different. As Judge Jung said at the time, beginning of the trial, he said, this is a novation. This is a contract to modify a contract, which you can do. They contracted to end their contract. That's what the district court found. All right. Thank you. Your question is, it's different. It would be a different scenario. I agree. Thank you, Your Honor. All right. You have five minutes for rebuttal, Mr. Leroux. Thank you. Just to respond to some of the arguments made, first of all, we didn't waive anything. We predicated our motion to refer this case to arbitration based on the counts in the complaint, all of which we represented to the court were arbitrable issues. And if you look, there was nothing about repudiation. The first count asked for rescission. And I understand the distinction between rescission and repudiation. There's a difference. You're not waiving any counts. Mr. Leroux, what was the court doing? What was Judge Jung doing? I read the transcript, and I find no objection to what he was doing. I didn't object to what he was doing. The only objection... No, no, no. What was he doing? He was evaluating our motion to refer the case to arbitration. Oh, no. He started off to say that he was determining whether there was a novation, which he called a repudiation, which means an agreement to repudiate the contract. That's what he started off with. You have a long evidentiary hearing. You participated in it. The parties testified that he wanted to hear from, and nobody objected to that. And at the very end, you found that the agreement had been repudiated. No objection. No rule 59E motion. No, sir. Nothing whatsoever. So we're here on Judge Jung's... On the transcript of the hearing that he conducted, and it's factual finding, aren't we? That's correct. Okay. So why was there a repudiation as he found it? What was clearly erroneous about his factual finding of a repudiation? Well, a couple of things we felt were important, because first of all, in our papers, we asked that he conduct a trial. No, no. What is... Whatever happened to be in the pleadings, it wound up before Judge Jung, and he had a bench trial on whether or not the parties had repudiated the agreement. And what I want to know is, where is the clearly erroneous, the seeds, the error in his fact finding on what he heard? Based on what he heard, it was our position that he was evaluating the whether or not there was an innovation or a repudiation of the agreement, period, prior to the filing of the lawsuit. And I understand that fully. The argument that we made then goes back... Where in this transcript do I find anything from you, where you're telling the judge it's going down the wrong path? The only... The issue that we stressed to the judge was that this was a communication that was based on the scope of the original letter from Mr. Reiterman's counsel, that this was an invitation to discuss settlement. I don't find anything like that in this transcript. I find... He began the hearing, announced all parties present and so forth, and said, here's why we're here. Not a word. You're wrong, judge. That's not why we're here. No, no one corrected. I'm going to determine in a bench trial, basically, whether there's a repudiation of the agreement. And we felt that that was an issue that would be subject to the arbitrator. Oh, not a word. Well, then he shouldn't have been hearing it. Well, your argument is you should have said on the third page after the judge made that announcement, your honor, you're mistaken. We were trying to convince... You're not supposed to entertain this testimony. It should go to the arbitrator. I find nothing at all, even a hint of that. I can't say that we made that argument directly to the judge because we felt that the entire scope of the motion to refer the case to arbitration embraced the fact that it should not be a decision made by the court. Therefore, he should never have held the hearing. That's your argument, is it not? He assumed what should have been presented to arbitrators. That's your argument. It's our argument that his decision should have been referred to the arbitrator. And he should not have conducted this hearing. Well, the hearing from our position was to decide whether or not to grant our motion to refer the case to arbitration. I understand that, but then he shaped the hearing and decided whether there'd been an ovation, which he used that word and he said the word is repudiation. That's what he decided. His argument is he should never have been doing that. That's what the arbitrator should have been doing. That's correct. But I find nothing in the transcript saying that judge, you're mistaken with what you're doing here for 88 pages. There's nothing there. And the only other vehicle after he issued his order would have been a rule 59E motion. Isn't that right? That's correct. We did not file. And you didn't file a 59E, did you? No, sir. Okay. So we have, this is, as far as I'm concerned, this is the record before us. And I concur. Okay. And his order in it, his order, which was based on this record. I concur. Okay. And again, you have to, you have to understand our position there in court when he shifted, if he did, from the motion to refer the entire matter to arbitration, it was our position that whether it was referred to as rescission or repudiation or any issue dealing with a dispute between Mr. Reiterman and Ms. Abed, that was related to the contract. He was determining whether there was an agreement before the lawsuit was even filed. I believe the timeframe is correct. Yes. Okay. Counsel, your time has expired. Right. Thank you for the privilege. Thank you both. We have your case under submission and we are in recess until tomorrow morning. Thank you. Thank you.